IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>MEDXCEL FACILITIES MANAGEMENT, LLC,<br><br>    Defendant. | Case No. 1:17-cv-00790-RLY-MJD |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The undisputed, dispositive facts are simple. Medxcel Facilities Management, LLC ("Medxcel" or "Defendant") terminated Plaintiff Paul Davis's ("Plaintiff" or "Davis") employment due to repeated poor performance and client complaints. Despite ongoing counseling, discipline, and performance improvement plans delivered by multiple managers and human resources representatives over an 18-month period in an attempt to help Davis improve his job performance, Davis continued to fail to meet performance goals. Davis attempts to downplay the performance concerns raised; however, he does not deny the fact that the concerns were addressed with him.

Davis contends that only one individual at Medxcel – supervisor Kenneth Gordon ("Gordon") – discriminated against him. However, Davis admits that Medxcel began coaching and disciplining him well before Gordon took over as supervisor. Further, the undisputed evidence demonstrates that supervisors discussed terminating Davis's employment even before Gordon became Davis's supervisor. As Davis himself concedes, on March 30, 2016, Waller stated, "I have seen enough . . . I should fire you right here and now."

Despite his own admissions, Davis relies on his own speculation to contend that but for his age and/or alleged disability, Medxcel would not have disciplined him or terminated his employment. Such speculation is not enough to defeat Medxcel's Motion for Summary Judgment. Davis has not offered a shred of *evidence* that Medxcel terminated his employment because of his age or any disability. Indeed, Davis acknowledges there are no similarly situated, non-disabled, or younger, individuals who were treated more favorably. Davis testified he did not believe anyone else without a disability was treated more favorably. Additionally, Davis has presented no evidence that any younger employee who received similar progressive discipline was treated more favorably.

Further, no genuine issues of material fact exist to support Davis's claim that he was entitled to time and a half compensation for any hours over 40 worked in a week. Davis acknowledges he performed the tasks of a supervisor, including the supervision of at least two subordinate employees. The material facts as to Davis's status as a supervisor are not in dispute. Accordingly, Medxcel respectfully requests that the Court enter summary judgment in its favor on all of Davis's claims.

## I.  ARGUMENT[1]

Davis has not provided evidence to prove he would not have been disciplined and terminated but for his age or an alleged disability. Rather, the undisputed evidence demonstrates Medxcel terminated Davis's employment due to repeated poor performance and client complaints. The undisputed evidence also demonstrates that Medxcel properly classified Davis as an executive employee exempt from the overtime requirements set forth in the Fair Labor Standards Act ("FLSA") and the Indiana Wage Claim Act ("IWCA").

### A.  **Davis Does Not Dispute the Material Facts At Issue on Summary Judgment.**

Davis does not – and indeed, cannot – dispute any of the *material* facts set forth in Medxcel's Brief in Support of Motion for Summary Judgment ("Motion for Summary Judgment"). Specifically, Davis does not dispute the following central facts, which are case dispositive:

- Several other supervisors, in addition to Gordon, disciplined and counseled Davis for performance failures during the 18 months Davis worked for Medxcel. These disciplinary actions included two written warnings, a Performance Development Plan and several verbal counselings that occurred while Davis was supervised by Jason Callis – before Gordon took over as supervisor. (Deposition of Paul Davis ("Davis Dep.") at 24:2-19, 93:21-94:2,  94:19-95:6, 106:18-107:4, 108:24-109:12, 125:12-24 & Exs. 5 & 6; Declaration of Eric Waller ("Waller Decl."), ¶¶ 10, 13, 15-16, 19 & Ex. A; Declaration of Jason Callis ("Callis Decl."), ¶¶ 5, 9, 22-23, 25-27, 29 & Exs. A & B; Declaration of Zach Matthews ("Matthews Decl."), ¶¶ 6-9 & Exs. A & B).

---

[1] Medxcel cannot possibly respond to each of Davis's alleged "disputed facts," most of which are either not material or are mere speculation—or both. Suffice it to say, each of the undisputed facts in Medxcel's Motion for Summary Judgment is supported by record evidence, including, in almost every instance, Davis's own deposition testimony. Most of the "evidence" Davis proffers to support his theories or to refute Medxcel's statement of facts is his own testimony, containing his own allegations and speculation, which are simply insufficient to create a genuine issue of material fact and defeat Medxcel's Motion for Summary Judgment. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 791 (7th Cir. 2015) ("At the summary judgment stage, however, circumstantial evidence of discrimination 'must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation.'") (citing *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014) (quoting *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012)); *see also Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (stating that a nonmoving party is entitled "to all reasonable inferences in her favor" but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion").

- Supervisors received repeated complaints from hospital staff regarding Davis's performance deficiencies and rude communication – both before and after Gordon became Davis's supervisor. (Davis Dep. at 106:14-17; Callis Decl., ¶¶ 9, 21, 24-25; Deposition of Jill Lancaster ("Lancaster Dep.") at 3:13-19, 11:13-25; Declaration of Daniel Lovelace ("Lovelace Decl."), ¶¶ 8-9; Waller Decl., ¶¶ 14-15; Deposition of Kenneth Gordon ("Gordon Dep.") at 68:10-21, 69:3-13, 100:10-22).

- Davis's poor job performance led to serious safety concerns, including a water main break that occurred at Women's Hospital in May 2015, and the failure of an air-handling unit at Women's Hospital's Neonatal Intensive Care Unit ("NICU") in November 2015.[2] (Davis Dep. at 102:4-103:8, 103:14-104:22 & Ex. 5; Callis Decl., ¶¶ 12-13, 15-16; Lovelace Decl., ¶ 7; Waller Decl., ¶ 12).

- Supervisors other than Gordon discussed terminating Davis's employment even before Gordon became Davis's supervisor. As Davis himself concedes, on March 30, 2016, Waller stated, "I have seen enough . . . I should fire you right here and now." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n Br.") at 4. After the March 30, 2016 PDP was issued to Davis, Matthews recommended that, due to continued serious performance deficiencies, Davis should be terminated if he did not improve significantly in a short period of time. Matthews and Callis communicated those concerns to Davis. (Davis Dep. at 97:11-19, 105:1-107:4; Callis Decl., ¶¶ 28, 33; Waller Decl., ¶ 18; Matthews Decl., ¶ 12; Gordon Dep. at 39:17-40:4).

- Davis never sought an accommodation for stress and never mentioned stress as a medical condition. Additionally, Davis never complained about any alleged discrimination during his employment with Medxcel. (Davis Dep. at 28:15-22, 108:24-110:2, 123:18-124:5, 163:17-20, 204:19-24, 206:10-207:2, 210:4-21, 211:16-18 & Ex. 6; Callis Decl., ¶¶ 30, 34; Waller Decl., ¶ 20; Matthews Decl., ¶¶ 10, 20, 22).

- After the March 30, 2016 PDP was issued, Medxcel received several more complaints from hospital staff regarding Davis's failure to complete work orders or to fix problems correctly, as well as Davis's continued discourteous communication with hospital staff, including a call from an outside vendor who reported that Davis threatened him. (Davis Dep. at 184:8-185:18, 189:15-191:17; Gordon Dep. at 68:10-21, 69:3-13, 100:10-22).

- Davis does not dispute that Medxcel received two more complaints from hospital staff *after* Davis received a Final Warning on July 7, 2016. (Davis Dep. at 175:2-15 & Ex. 8; Gordon Dep. at 89:19-22, 91:1-7; Matthews Decl., ¶¶ 15-16 & Ex. D). In one of those incidents, Davis told Jill Lancaster, Manager of Perinatal Services, Lactation and Bereavement at Women's Hospital, to "take a chill pill" during a facilities sewer leak

---

[2] Davis improperly characterizes the warnings he received as a result of these serious safety incidents as "minor." (Pl.'s Opp'n Br. at 4). The evidence demonstrates the effect of these serious performance lapses were anything but "minor." Infants in the NICU frequently are unable to regulate their body temperatures, and temperature control is critical to their safety. (Callis Decl., ¶¶ 15-16). His characterization of this concern as "minor" defies logic and common sense.

4

- where a burst pipe dropped liquid on another employee's head. (Lancaster Dep. at 13:4-15:6, 18:1-14; Gordon Dep. at 69:5-13).

- Davis acknowledged he failed to meet many of the expectations set forth in the Final Warning. (Davis Dep. at 135:14-136:18, 193:1-11; 194:22-195:14, 199:5-13, 201:19-202:2; Matthews Decl., ¶ 17; Gordon Dep. at 99:12-100:12).

- Gordon was not the only decision-maker on Davis's termination. Gordon, Waller, Breeze and Matthews all participated in the termination decision and the notification of termination to Davis. (Davis Dep. at 208:23-209:25 & Exs. 10 & 11; Waller Decl., ¶¶ 21, 23; Matthews Decl., ¶ 18; Gordon Dep. at 99:12-25).

- Davis has proffered no evidence that similarly situated employees without a disability received more favorable treatment. Indeed, not only did Davis not identify any similarly situated individuals who were treated more favorably, he conceded in his deposition that he did not believe that anyone else without a disability was treated more favorably. (Davis Dep. at 216:21-23). Further, Davis failed to identify any similarly situated, younger employees who were treated more favorably. In his response, he points to <u>no</u> Medxcel employees <u>with similar performance issues</u> – including two written warnings, a Performance Development Plan, several verbal counselings, and a Final Warning – who were retained.

- Davis does not dispute that (1) he was the only Facilities Supervisor at Women's Hospital; (2) he performed supervisory duties; and (3) he had two technicians who reported to him during his entire tenure at Medxcel. (Davis Dep. at 18:10-17, 21:2-11, 23:10-13, 31:12-14, 32:17-33:2-16, 34:13-18, 80:4-14; Callis Decl., ¶ 8; Lovelace Decl., ¶¶ 5-6; Deposition of Mitchell Breeze ("Breeze Dep.") at 42:18-43:2).

- Davis's annual base salary in 2016 was $64,084.80, or approximately $1,232.40 per week. (Davis Dep. at 83:20-84:1 & Ex. 2). While employed at Medxcel, Davis never filed a wage claim with the Indiana Department of Labor, and he never raised any internal complaints about the transition to salary. (Davis Dep. at 89:9-10, 90:18-20).

These facts, ***which Davis does not dispute***, justify entry of summary judgment in Medxcel's favor on Davis's claims.

B. **Davis Has Not Proven that Age or Alleged Disability Was the Motivating Factor in His Termination.**

The undisputed evidence demonstrates Medxcel terminated Davis's employment after repeatedly counseling him for performance deficiencies over the course of 18 months without

5

observing any meaningful improvement – and not because of Davis's age and any alleged disability.

    1.    <u>Davis Has Failed to Produce Direct or Circumstantial Evidence, or a *Prima Facie* Case of Age Discrimination.</u>

Davis can avoid summary judgment on his age discrimination claim only if he "produce[s] evidence from which a jury could infer that [his] age 'was a but-for cause of his termination.'" *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014) (citing *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Indeed, whether Davis chooses to proceed through direct or circumstantial evidence or through a burden-shifting framework, the burden remains on Davis to proffer evidence such that a reasonable juror could conclude he would have kept his job but for his age. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016). Under either path, Davis has failed to meet his burden.

First, Davis has not produced any direct or circumstantial evidence of age discrimination. As set forth in detail in Medxcel's initial brief, Gordon's habit of referring to individuals as "O' [insert name]," and the alleged statement that Gordon employed "younger guys at Seton"[3] do not constitute direct evidence of age discrimination as a matter of law. Even if Gordon made the alleged comments, they occurred several months before Davis's termination and cannot support Davis's claim of age bias. Davis also offers no evidence to contradict the sworn testimony and fails to address the evidence that Gordon addressed everyone, regardless of age, as "O' [insert name]." (Gordon Dep. at 118:14-119:12; Lovelace Decl., ¶ 14). Additionally, Davis fails to produce any evidence that "O" refers to "old" or is related to Davis's age in any way. Davis does not allege that Gordon called him "Old" Paul Davis.

---

[3] Again, Gordon denies making this comment. (Gordon Dep. 122:9-11).

With regard to Gordon's question related to Davis's retirement plans, Davis concedes he testified himself that Gordon stated, "I know that you talked about retiring, but we really want to – I really want you to stay here until you're in your 80s." (Pl.'s Opp'n Br. at 17). Davis argues that he "understood this comment to be discriminatory and sarcastic." (*Id.*). Davis also states, without any evidentiary support other than his own testimony, that he "got the feeling that Gordon looked at him as a white-haired old man that he didn't want to have around." (*Id.* at 7). However, such speculation is not enough to create a triable issue of fact.[4] *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 791 (7th Cir. 2015) ("At the summary judgment stage, however, circumstantial evidence of discrimination 'must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation.'"); *see also Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (stating that a nonmoving party is entitled "to all reasonable inferences in her favor" but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion").

Finally, Davis does not dispute that his supervisors had been criticizing Davis's performance well before Gordon allegedly made the above statements. Rather, the evidence demonstrates that Callis, Waller and Matthews had been counseling Davis regarding his leadership and communication styles for over a year before Gordon became Davis's supervisor. (Davis Dep. at Exs. 5 & 6; Callis Decl., ¶¶ 9-32; Waller Decl., ¶¶ 9-21; Matthews Decl., ¶¶ 6-10).[5] Davis himself admits nothing Callis did was discriminatory. (Davis Dep. at 28:15-22). The incontrovertible evidence demonstrates that Davis was well down the disciplinary road before

---

[4] In addition, Davis fails to address the fact that Facilities Technician Dan Lovelace is also over 60 and continues to work in the Facilities Management Department at Medxcel. (Lovelace Decl., ¶¶ 2-3).

[5] Davis even concedes in his opposition brief that, in the meeting on March 30, 2016, immediately after the inspection of Women's Hospital, Waller stated, "I have seen enough . . . I should fire you right here and now." (Pl.'s Opp'n Br. at 4).

Gordon took over as supervisor – an event that was indisputably quite late in Davis's disciplinary timeline. Thus, Davis cannot show that Gordon's alleged comments constitute direct or circumstantial evidence of age discrimination.

Additionally, Davis has not demonstrated a *prima facie* case of age discrimination. Indeed, Davis concedes he was failing to perform his job satisfactorily. Specifically, Davis acknowledged he failed to meet many of the expectations set forth in the Final Warning. (Davis Dep. at 135:14-136:18, 193:1-11; 194:22-195:14, 199:5-13, 201:19-202:2). *Anderson v. Jewel Food Stores, Inc.*, 837 F. Supp. 2d 826, 833 (N.D. Ill. 2011) (Plaintiff "has not presented evidence raising a genuine dispute as to any material fact that she was meeting Jewel's legitimate job expectations because she violated the food handling and coding policies in May 2008."). Further, Davis failed to identify any similarly situated, younger employees who were treated more favorably. In his response, he points to <u>no</u> Medxcel employees <u>with similar performance issues</u> – including two written warnings, a Performance Development Plan, several verbal counselings, and a Final Warning – who were retained. Thus, Davis has failed to establish a *prima facie* case of age discrimination.

2. <u>Davis Has Not Established a *Prima Facie* Case of Disability Discrimination.</u>

Similarly, Davis has not demonstrated a *prima facie* case of disability discrimination. Davis concedes he was not performing his job satisfactorily. (Davis Dep. at 135:14-136:18, 193:1-11; 194:22-195:14, 199:5-13, 201:19-202:2). Further, Davis has proffered no evidence that similarly situated employees without a disability received more favorable treatment. Indeed, not only did Davis not identify any similarly situated individuals who were treated more favorably, he conceded in his deposition he did not believe that anyone else without a disability was treated more favorably. (Davis Dep. at 216:21-23). Medxcel raised that point in its initial brief, and

Firmwide:154489978.1 077095.1009

Davis failed to address it in his response brief. Therefore, Davis's disability claim fails as a matter of law for failure to state a *prima facie* case.

    3.    <u>Davis Has Failed to Meet His Burden of Proving that Medxcel's Legitimate-Non-Discriminatory Reason for Davis's Termination Was Pretextual For Intentional Discrimination Based on Age or Disability.</u>

Again, Davis concedes he was not performing his job in a satisfactory manner. Additionally, he admits he was counseled and disciplined by supervisors other than Gordon, before Gordon even became Davis's supervisor. He fails to dispute that other supervisors had warned him that if his performance did not improve, he could be subject to termination. He fails to dispute his supervisors observed a backlog of work orders that were six months past due. He also admits hospital staff lodged various complaints about Davis's poor performance and his rude communication toward hospital staff. Nevertheless, Davis argues (1) Medxcel did not have a legitimate, non-discriminatory reason for his termination; and (2) Medxcel's proffered reason was pretext for discrimination. Plaintiff fails to meet his burden on those points.

Even assuming Davis could establish a *prima facie* case of age or disability discrimination, the burden merely shifts to Medxcel to provide a legitimate, non-discriminatory reason for the adverse action. *See Stewart v. Henderson,* 207 F.3d 374, 376 (7th Cir. 2000). Medxcel has provided such a reason – i.e., repeated poor performance and client complaints without any meaningful improvement over an 18-month period. As Medxcel has made this showing, the burden shifts back to Davis to prove Medxcel's asserted reason is pretextual. In order to meet his burden, Davis must present evidence suggesting the employer is concealing its true motives. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Id.* "[I]t is not 'the court's concern that an employer may be wrong about its employee's performance, or be too hard on its

employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.'" *Ineichen v. Ameritech,* 410 F.3d 956, 961 (7th Cir. 2005) (internal citations omitted)). "To meet this burden, [Davis] must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [Medxcel's] asserted reason 'that a reasonable person could find it unworthy of credence.'" *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).

Davis has failed to satisfy his burden. First, with regard to Medxcel's proffered reason for termination, Davis argues the reason itself was not legitimate, contending that "Medxcel held Davis to unreasonable work standards." (Pl.'s Opp'n Br. at 1). However, Davis's disagreement with Medxcel's decision to terminate him does not create a triable issue of fact related to his claims of discrimination based on age or disability. *See Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009) ("[The court does] not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's business decision replayed to determine best business practices.") (citing *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)). Further, Davis fails to point to evidence demonstrating Medxcel did not hold other non-disabled, or younger workers to those same standards.

Additionally, in his response brief, Davis contends Gordon held him to "unreasonable rounding requirements," suggesting Gordon required Davis to complete EOC rounding on a daily basis. (Pl.'s Opp'n Br. at 7-8, 31). This contention mischaracterizes the evidence. Elsewhere in his brief and in his deposition, Davis concedes Gordon agreed to weekly rounding. (*Id.* at 8; *see also* Davis Dep. at 134:12-135:18; Breeze Dep. at 37:12-39:3; Gordon Dep. at 120:18-121:16). As set forth herein, weekly rounding was particularly important in light of the

Firmwide:154489978.1 077095.1009

complaints from hospital staff and the fact that "[r]eview of work orders showed past due [orders] dating back 6 months." (Davis Dep. at Ex. 9).

Further, Davis contends "Gordon could not identify any specific event during the two weeks after the Final Warning which would give rise to a legitimate, non-discriminatory reason to terminate Davis." (Pl.'s Opp'n Br. at 18, 30). This contention also mischaracterizes the evidence. Gordon's testimony specifically references "incomplete rounds. Incomplete inspections on construction sites. Negative conversations with managers." (Gordon Dep. at 95:25-96:24). Additionally, Davis conveniently omits Gordon's testimony regarding the sewer leak incident and the complaints from staff regarding Davis's suggestion that Ms. Lancaster "take a chill pill" regarding that incident. (Gordon Dep. at 69:5-13). Indeed, Davis's opposition brief glosses over the sewer pipe incident, as well as the other complaints received from hospital staff by Gordon, Waller and Callis (and even by Lovelace) regarding Davis's repeated performance issues and rude communications.[6] Two of those complaints (including the sewer pipe incident) occurred <u>after</u> Davis received his Final Warning.[7] Davis does not dispute his

---

[6] In his opposition brief, Davis either blames his performance issues on others, or he refuses to acknowledge the seriousness of the particular incidents, characterizing certain incidents which had significant safety implications as "minor," including an incident in which an air-handling unit broke at Women's Hospital's Neonatal Intensive Care Unit ("NICU"). The evidence demonstrates that this incident was anything but "minor," as infants in the NICU frequently are unable to regulate their body temperatures, and temperature control is critical to their safety. (Callis Decl., ¶¶ 15-16). It is exactly Davis's pattern of blaming others for his performance issues and characterizing such serious incidents as "minor" that makes his previous termination from employment relevant to this case.

[7] Regarding Davis's admonition that Ms. Lancaster "take a chill pill," Davis admits he made that statement but seems to suggest that making such a statement was acceptable because he "nicely patted her on the back" while he said it. (Pl.'s Opp'n Br. at 32 n.19). Lancaster found Davis's comment to be "really rude in the moment of trying to deal with somebody who has potential infectious waste over their head." (Lancaster Dep. at 30:5-8).

supervisors received any of those complaints (*see* Pl.'s Opp'n Br. at 31-32), suggesting only that the complaints should not have warranted termination or are "inadmissible hearsay."[8]

Davis has failed to show that Medxcel's proffered reason for his termination "was a lie" (*Ineichen,* 410 F.3d at 961), and that the true reason for his termination was his age or alleged disability. As set forth herein, Davis contends that only Gordon harbored discriminatory animus against him.[9] But Gordon was not the only decision-maker on Davis's termination. (Davis Dep. at 208:23-209:25 & Exs. 10 & 11; Waller Decl., ¶¶ 21, 23; Matthews Decl., ¶ 18; Gordon Dep. at 99:12-25). Further, the evidence shows that other supervisors and HR personnel, including Waller, Callis and Matthews, repeatedly had counseled and disciplined Davis for poor performance and communication and opined that Davis should be terminated unless Davis showed significant improvement in a short period of time. (Davis Dep. at 97:11-19, 105:1-107:4; Callis Decl., ¶¶ 28, 33; Waller Decl., ¶ 18; Matthews Decl., ¶ 12; Gordon Dep. at 39:17-40:4).

---

[8] Additionally, the complaints by hospital staff are not hearsay, as they are not being offered to prove the truth of the matter asserted. Rather, they are being offered to explain the reaction of the decision-makers, who investigated those complaints and were able to substantiate many of the performance and communication problems raised in those complaints. *See United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) (explaining that out-of-court statements are not hearsay if they are offered not for the truth but to put the statements in context or to explain the reaction of another person to the declarant's statement). For example, as Davis concedes, after Waller received a complaint, he inspected the hospital himself in March 2016 and then told Davis, "I should fire you right here and now." (Pl.'s Opp'n Br. at 4).

[9] For the first time, Davis also seems to be advancing a theory of hostile work environment, even though no such claim appears in his Complaint. (Pl.'s Opp'n Br. at 33-35). It is inappropriate to add a new claim at this stage. *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 902-03 (S.D. Ind. 2009) ("[P]laintiffs did not include these claims in their complaint . . ., and they may not amend their complaint through a summary judgment brief"). Further, even if this were a proper claim, Davis's argument is either based on no evidence at all or completely mischaracterizes the testimony. For example, Davis contends "Gordon intentionally induced stress in the hope that Davis would step down as supervisor or retire," citing to Mitchell Breeze's deposition for that ridiculous proposition. (Pl.'s Opp'n Br. at 34). However, Breeze's testimony provides no support for that assertion. Rather, Breeze's testimony (and the other evidence, including Davis's testimony) establishes that Davis himself asked to step down as Facilities Supervisor and when he changed his mind, his supervisors allowed him to remain in the supervisory position. (Davis Dep. at 176:11-19, 178:3-16, 180:3-7 & Exs. 8 & 24; Gordon Dep. at Ex. 23; Breeze Dep. at 33:1-14). Davis also argues that "Gordon clearly intended to exploit Davis's disability" – citing to no evidence whatsoever. (Pl.'s Opp'n Br. at 35).

As discussed above, Davis also does not dispute the complaints that Gordon and other supervisors received from hospital staff regarding Davis's job performance and communication style.[10]

With regard to Davis's claim of disability discrimination, he argues Medxcel discriminated against him as a result of some alleged medical condition related to stress. But the evidence shows that Davis never sought a medical accommodation related to stress and did not mention stress to anyone as a medical condition. (Matthews Decl., ¶ 22; Callis Decl., ¶ 34). The evidence also demonstrates Davis's supervisors discussed with Davis ways to manage his stress in order to improve his job performance. (Davis Dep. at Exs. 6, 8 & 10; Matthews Decl., ¶ 22). Specifically, Davis grew short tempered when difficult situations arose and was unprofessional or rude in his communications with co-workers and Women's Hospital employees. (Davis Dep. at 184:8-185:18, 189:15-191:17 & Exs. 5, 6, 8; Lancaster Dep. at 14:19-15:6, 30:5-8; Gordon Dep. at 68:10-21, 69:5-13, 100:17-22; Lovelace Decl., ¶ 8; Callis Decl., ¶¶ 21-22 & Ex. A; Matthews Decl., ¶ 6, 16, 22).

Callis and Gordon counseled Davis about these communications and made recommendations for dealing with the stress as it related to Davis's job performance. Their

---

[10] In opposition to Medxcel's summary judgment motion, Davis offers affidavit testimony from hospital staff members at Women's Hospital who generally aver that Davis was a good performer and that they were surprised when his employment was terminated. Medxcel objects to many of the assertions set forth in those affidavits under Local Rule 56-1(i), as they are conclusory, speculative, based on inadmissible hearsay, and/or lack a factual foundation sufficient to demonstrate they are grounded in personal observation or other first-hand experience. For example, Davis's wife, Theresa Davis, filed an affidavit stating, *inter alia*, that "[s]hortly after [Davis] was let go, I quickly came to learn that [Davis] had been replaced by a much younger individual named Daniel Wasden . . . ." Ms. Davis provides no factual foundation to demonstrate that this (incorrect) assertion is grounded in personal observation or other first-hand experience. But even if Davis's proffered affidavits contained entirely admissible evidence, not one of the affidavits controverts the undisputed material facts set forth in Section I.A. of this Reply Brief. Further, none of the affidavits dispute the incontrovertible evidence (admitted by Davis) that (1) Davis received discipline from other supervisors other than Gordon; (2) other supervisors discussed terminating Davis's employment even before Gordon became Davis's supervisor; and (3) other hospital staff members lodged complaints about Davis's performance and communication style to supervisors, both before and after Gordon became Davis's supervisor.

discussions did not relate to any alleged or perceived medical condition. (Davis Dep. at Exs. 6, 8 & 10; Matthews Decl., ¶ 22). Further, the ADA does not "shelter disabled individuals from adverse employment actions if the individual, *for reasons unrelated to his disability* (such as a poor work ethic, carelessness, bad attitude, insubordination or unprofessional demeanor) is *not qualified* for the job or is *unable to perform* the job's essential functions or fulfill the requirements of the position as prescribed by the employer or 'fails to meet his employer's expectations.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005).

Davis simply cannot point to any evidence proving Medxcel discriminated against him because of any stress-related medical condition. Consequently, Davis has failed to satisfy his burden of "'identify[ing] such weaknesses, implausibilities, inconsistencies, or contradictions' in [Medxcel's] asserted reason 'that a reasonable person could find it unworthy of credence.'" *Coleman*, 667 F.3d at 852 (internal quotations and citations omitted). Thus, his disability and age discrimination claims both fail as a matter of law.

## C. Davis's Own Evidence Establishes Medxcel Properly Classified Him as an Executive Employee Exempt from Overtime Requirements.

Despite Davis's arguments to the contrary, his own testimony establishes Medxcel properly classified him as an executive employee exempt from overtime requirements under the FLSA and/or the IWCA.[11] There is no genuine issue of material fact as to Davis's position and his supervisory tasks, and therefore, this is clearly a question of law to be decided on summary judgment. First, Davis admits he was promoted to Facilities Supervisor in or around 2013 (Davis Dep. at 18:10-17, 23:10-13), and that he was the only Facilities Supervisor at Women's Hospital during his tenure with Medxcel. (Davis Dep. at 23:10-13). Davis also admits his annual base

---

[11] As Davis provided evidence that he exhausted his administrative remedies under the IWCA, Medxcel's withdraws the argument that Davis's IWCA claim is barred for failure to exhaust. However, Davis's IWCA claim is wholly derivative of his claim under the FLSA and fails for the same reasons his FLSA claim fails, as set forth herein.

14

salary exceeded the requisite $455 per week. (Davis Dep. at 83:20-84:1 & Ex. 3; Pl.'s Opp'n Br. at 22). Further, Davis admits the Facilities Department at Women's Hospital is a customarily recognized department or subdivision. (Pl.'s Opp'n Br. at 22). Additionally, Davis does not dispute that while he was Facilities Supervisor at Women's Hospital, at least two facilities technicians reported to him, including Trivett and Lovelace. (Davis Dep. at 21:2-11, 31:12-14, 32:17-33:2-16, 34:13-18, 80:4-14; Breeze Dep. at 42:18-43:2; Callis Decl., ¶ 8; Lovelace Decl., ¶¶ 5-6). This satisfies the number of subordinates required by 29 C.F.R. § 541.100(a)(3) to meet the Executive Exemption.

Further, contrary to Davis's assertions, the undisputed evidence demonstrates that Davis's primary duties were management in nature. In his deposition, Davis admitted he participated in interviewing job applicants and recommending which applicants should be hired. (Davis Dep. at 51:24-52:2, 78:24-79:18; Callis Decl., ¶¶ 7-8). Davis also testified that he provided day-to-day direction to the facilities staff. (Davis Dep. at 38:25-39:2; Gordon Dep. at 112:10-15). He directed his technicians regarding how to prioritize their work orders and plan their day-to-day tasks. (Davis Dep. at 48:7-49:11; Gordon Dep. at 114:13-19; Callis Decl., ¶ 7; Lovelace Decl., ¶ 6). Davis also testified that he was involved in disciplining his subordinates through verbal counselings. (Davis Dep. at 76:25-77:6; Breeze Dep. at 43:11-18; Callis Decl., ¶ 8). He also participated in the decision to terminate a technician, and communicated the decision to the technician. (Davis Dep. at 52:7-18; Callis Decl., ¶¶ 7-8). Davis also testified that he was involved in the bid process for certain vendors and contractors and overseeing those contractors' projects. (Davis Dep. at 59:4-11, 60:1-7; Callis Decl., ¶7). Specifically, Davis was responsible for ensuring contract compliance and vendor/contractor performance. (*Id.* at 61:1-9 & Ex. 1; Callis Decl., ¶ 7). Finally, Davis testified that he was responsible for the supervisory tasks of

15

ensuring that any repair work was in compliance with federal, state and local requirements as well as the standards of the Joint Commission, the accreditation body for health care facilities. (Davis Dep. at 63:19-64:4, 71:7-20 & Ex. 1). Davis cannot now back away from his own testimony.

In his opposition brief, Davis suggests his primary duties were not management in nature because he was performing certain of those duties "only occasionally," and did not perform all of the fifteen categories set forth in 29 C.F.R. § 541.102. (Pl.'s Opp'n Br. at 24-26). As set forth in Medxcel's initial brief, the list of categories set forth in Section 541.102 is not intended to be exhaustive and other activities, evaluated on a case-by-case basis, may be considered managerial. 69 Fed. Reg. 22133 (Aug. 23, 2004); *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 877 F. Supp. 2d 1161, 1168 (N.D. Ala. 2012) ("[T]he regulations are clear that these factors, while helpful, are not exhaustive."). Further, as set forth above, Davis admits that he was performing many of the duties set forth in the categories. The evidence establishes that Davis's daily activities fit squarely within the managerial activities identified in the regulations, and consequently constitute management duties pursuant to the FLSA. 29 C.F.R. § 541.102. Thus, Davis's duties as a Facilities Supervisor were management duties pursuant to the FLSA.

## II. CONCLUSION

For the reasons outlined above, Medxcel is entitled to summary judgment on each of Davis's claims. There are no genuine issues of material fact requiring a trial. This Court should grant Medxcel's Motion for Summary Judgment and dismiss Davis's Complaint with prejudice.

Respectfully submitted,

/ s / Alan L. McLaughlin
Alan L. McLaughlin (#10182-49)
Emily L. Connor (#27402-49)

LITTLER MENDELSON, P.C.
111 Monument Circle, Suite 702
Indianapolis, IN 46204
Telephone: 317.287.3600
Facsimile:  317.636.0712
E-mail: amclaughlin@littler.com
         econnor@littler.com

*Attorneys for Medxcel Facilities Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 9th day of May 2018, filed a copy of the foregoing *Defendant's Reply in Support of Motion for Summary Judgment* electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Kathleen A. DeLaney
Annavieve C. Conklin
DeLANEY & DeLANEY LLC
3646 North Washington Blvd.
Indianapolis, IN  46205

/ s / Alan L. McLaughlin

Firmwide:154489978.1 077095.1009